■ EMMA BARATH, Appellant, v DONALD J. MARRON, Defendant and Third-Party Plaintiff-Respondent, STEPHANIE A. MOORE, Respondent, et al., Third-Party Defendant. [684 NYS2d 553] —On the Court's own motion, it is

Ordered that the unpublished decision and order of this Court dated October 13, 1998, in the above-entitled case, is recalled and vacated, and the following decision and order is substituted therefor:

In an action to recover damages for personal injuries, the plaintiff appeals (1) from a judgment of the Supreme Court, Nassau County (Feuerstein, J.), dated October 29, 1996, which, upon a jury verdict in favor of the defendants, *inter alia,* dismisses the complaint insofar as asserted against the defendant Stephanie A. Moore, and (2) from a judgment of the same court, dated June 17, 1997, which, *inter alia,* dismisses the complaint insofar as asserted against the defendant Donald J. Marron.

Ordered that the judgments are affirmed, with one bill of costs.

This negligence action stems from a three-car accident that occurred on the Southern State Parkway. The plaintiff was injured when the checkered cab in which she was a passenger, and which was operated by her husband Alex Barath, was

involved in a chain collision with vehicles operated by the defendant Donald J. Marron and the defendant Stephanie A. Moore. Barath was in the lead vehicle, which was followed ·by the vehicle operated by Marron, which was followed by the vehicle operated by Moore. After a jury trial, a verdict was returned in favor of the defendants and against the plaintiff.

Contrary to the plaintiff's contention, and contrary to the view of our dissenting colleague, the trial court properly charged the jury with respect to the emergency doctrine. A party requesting the emergency doctrine instruction is entitled to have the jury so charged if " 'under some reasonable view of the evidence, an actor was confronted by a sudden and unforeseen occurrence not of the actor's * * * making' " (*Bond-Green v McNally,* 233 AD2d 414, 415; *Rivera v New York City Tr. Auth.,* 77 NY2d 322, 327; *see also, Kuci v Manhattan & Bronx Surface Tr. Operating Auth.,* 88 NY2d 923, 924).

Viewing the evidence in the light most favorable toward giving the requested emergency doctrine instruction to the jury (*see, Rivera v New York City Tr. Auth., supra,* at 326; *see also, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., supra*), we find support in the record for so charging the jury. Both the plaintiff and Moore testified that the vehicle operated by Barath had been suddenly cut off by another vehicle as the latter vehicle attempted to merge onto the Southern State Parkway. Barath was then forced to either stop or precipitously slow his vehicle. Marron, who was approximately 24 to 25 feet behind the Barath vehicle, was traveling at about 30 miles per hour, and Moore, who was approximately the same distance behind the Marron vehicle, was proceeding at the speed of traffic. Under these circumstances, the jury could have reasonably concluded that the defendants were faced with an emergency situation not of their own making that could not have been reasonably foreseen (*see, Galitsis-Orengo v MCL Imports,* 251 AD2d 285; *Reid v Courtesy Bus Co.,* 234 AD2d 531; *Dutcher v Fetcher,* 183 AD2d 1052; *Varsi v Stoll,* 161 AD2d 590; *Green v Meyer,* 114 AD2d 352). Where, as here, a driver on the highway may be aware that cars may be present on an entrance ramp, a jury would not be precluded from deciding that the driver did not anticipate being suddenly cut off by the unknown car (*see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth., supra*; *see also, Hornacek v Hallenbeck,* 185 AD2d 561). Additionally, the jury would not be precluded from deciding that the defendants were not following too closely under the existing traffic conditions (*see, Zwilling v Harrison,* 269 NY 461; *De-Cosmo v Hulse,* 204 AD2d 953).

Moreover, the trial court properly denied the plaintiff's motion to set aside the verdict as against the weight of the evidence, as a fair interpretation of the evidence supports the jury's verdict (*see, Shapira v Kruger,* 231 AD2d 509, 510; *Nicastro v Park,* 113 AD2d 129, 132).

The plaintiff's remaining contention is without merit. Joy, J. P., Krausman and Goldstein, JJ., concur.

Luciano, J., dissents and votes to reverse the judgment and to reinstate the complaint, with the following memorandum:

I respectfully dissent and find that it was reversible error for the trial court to charge the jury with respect to the emergency doctrine based on the testimony presented at the trial. In determining that an emergency situation existed in this case which relieved the defendants of any liability, the majority has extended the class of highway situations which constitute emergencies beyond reasonable limits.

"[The emergency] doctrine recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context" (*Rivera v New York City Tr. Auth.,* 77 NY2d 322, 327). Where some reasonable view of the evidence establishes that an actor was confronted by a sudden and unforeseen occurrence not of the actor's own making, then the reasonableness of the conduct in the face of the emergency is for the jury (*see, Kuci v Manhattan & Bronx Surface Tr. Operating Auth.,* 88 NY2d 923; *see also, Rivera v New York City Tr. Auth., supra*). For several reasons, however, the situation faced by Marron and Moore did not constitute an emergency.

Marron, Moore, and the plaintiff's husband, Alex Barath, the driver of the taxicab which was purportedly cut off by an unidentified car merging into the right-hand lane of the highway, were all driving in that right-hand lane as they approached an entrance onto the highway. Since cars entering the highway are required to merge into the existing traffic, drivers already on the highway must be aware of, and must compensate for, the entering traffic. Merging traffic, even that which merges swiftly or suddenly, is not a situation distinguishable by some unusual quality such that drivers already on the highway cannot reasonably foresee the probability that a car entering onto the highway will merge in a less than safe and prudent manner. This type of vehicular event is entirely

commonplace, as distinguished from *Varsi v Stoll* (161 AD2d 590), cited by the majority. In contrast to the present case, the *Varsi* case involved a true emergency situation in which a car already on the highway darted suddenly, without signal or warning, from one lane to another, cutting off the defendant who was forced to come to a sudden stop.

Notably, the New York State Department of Motor Vehicles Driver's Manual cautions that drivers should stay alert for traffic entering ahead and, if possible, move out of the right lane into a lane to the left to allow more room for merging traffic. Such cautionary words clearly indicate that merging traffic is a commonplace occurrence. This is not to say that the defendants were required to change lanes, but rather to illustrate that they had a responsibility to anticipate the vagaries of merging cars. Significantly, there is no evidence in the record before us that the defendants were able to move to their left as they approached the merge. Thus, the defendants had a responsibility, remaining in the right-hand lane, to approach the highway entrance with appropriate caution.

Most important, Vehicle and Traffic Law § 1129 (a) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway". By the plain language of this statute, "it is clear that there is a violation of law when a driver follows another too closely without adequate reason and that a collision—rear end or otherwise—is not required" (*Darmento v Pacific Molasses Co.,* 81 NY2d 985, 988; *cf., Williams v City of New York,* 240 AD2d 734). As the plaintiff testified, there was a moderate amount of traffic on the road and her husband, a professional taxicab driver, was driving at a moderate speed of between 40 to 50 miles per hour in a 55 mile per hour zone. By his own admission, Marron testified that traffic was heavy and that he was traveling at a speed of approximately 30 miles per hour, but his car was only one to one and one-half car lengths behind the taxicab. Marron estimated the distance of a car length to be between 16 and 17 feet. Moore testified similarly that she was traveling at the speed of heavy traffic and the distance between her car and Marron's car was the same as the distance between Marron's car and the taxicab or, approximately 25 feet.

Most drivers are aware of the common practice to maintain a minimum following distance between vehicles of one vehicle length for every 10 miles per hour of speed maintained. Described by the First Department as the "assured clear

distance ahead" rule (*see, O'Farrell v Inzeo,* 74 AD2d 806, 807), the Court explained that "the rule constantly changes as the motorist proceeds, and is measured at any moment by the distance between the motorist's vehicle and the limit of his vision ahead, or by the distance between the vehicle and any intermediate discernible static or forward-moving object in the street or highway ahead constituting an obstruction in his path" (*O'Farrell v Inzeo, supra,* at 807).

Even assuming that Marron's car, a 1988 Oldsmobile Cutlass, and Moore's car, a 1987 Oldsmobile Cutlass, were of average length, we may conclude that neither driver was following at an adequate distance to avoid a sudden stop by a preceding car, whatever reason for that car's stop (*see, Silberman v Surrey Cadillac Limousine Serv.,* 109 AD2d 833; *see also, Gass v Flynn,* 57 Misc 2d 893, 895). Pursuant to Vehicle and Traffic Law § 1129 (a), the defendants were under a clear duty to maintain a safe distance between their vehicles, and their failure to do so, in the absence of an adequate nonnegligent explanation, constituted negligence as a matter of law (*see, Silberman v Surrey Cadillac Limousine Serv., supra,* at 833).

Apart from the question of whether a merging vehicle is a foreseeable occurrence, there is the question of whether the defendants' actions, as distinguished from the actions of Barath, were the proximate cause of the plaintiff's injuries. Marron and Moore were obligated to leave a sufficient distance between their respective cars. Their failure to do so contributed to the purported emergency situation, and may be considered a proximate cause of the plaintiff's injuries. Under the facts of this case, therefore, the trial court should not have instructed the jury regarding the emergency doctrine, since this provided the defendants with relief from culpability to which they were not entitled.